## UNITED STATES *v.* LYNCH.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 1195. Argued November 20, 1890. — Decided December 8, 1890.

In order to enable this court to entertain jurisdiction of a writ of error to the Supreme Court of the District of Columbia upon the ground that the validity of an authority exercised under the United States was drawn in question in the case, the validity of the authority must have been denied directly and not incidentally.

Where the relator in an application for mandamus seeks to compel the Fourth Auditor and the Second Comptroller to audit and allow a claim for mileage upon the ground that the statute provides for such mileage in terms so plain as not to admit of construction; that this court has so decided; and that hence the duty to be performed is purely ministerial; he does not thereby directly question the validity of the authority of the auditor to audit his account, and of the comptroller to revise and pass upon it.

On the 6th day of December, 1889, R. Mason Lisle filed a petition for a writ of mandamus in the Supreme Court of the District of Columbia against John R. Lynch, Fourth Auditor, and Benjamin F. Gilkeson, Second Comptroller, of the Treasury of the United States, and their successors, in the name of the United States, upon his relation, couched in these words:.

"1. The petitioner avers that he was an officer of the Navy from March 19, 1872, to May 6, 1872, of the rank of lieuten-

ant; that on March 19, 1872, he was ordered by his superior officer to proceed from Philadelphia, Pennsylvania, via New York and the Pacific mail steamer from New York, on March 30th, to Aspinwall, across the Isthmus of Panama, and thence to the navy-yard, Mare Island, California, and report for duty on board the U. S. S. 'Lackawanna'; that he proceeded by the said route, in accordance with said orders, completing the journey on May 6, 1872.

"2. That in obeying the said orders he travelled 6222 miles, viz., from Philadelphia to New York, 88 miles; from New York to Mare Island, 6134 miles. For his travelling expenses from Philadelphia to New York he was paid $8.80, being at the rate of ten cents per mile; but for his travelling expenses from New York to Mare Island he was only credited with mileage for the distance between the extreme points by the overland route—a route he was not ordered to travel and did not travel—3248 miles, at ten cents per mile, amounting to $324.80, whereas, by the law in force at the time of the travel, (Act of March 3, 1835, 4 Stat. 755,) he should have been credited with mileage for the distance actually travelled, 6134 miles, at ten cents per mile, amounting to $613.40; thus the petitioner has received $288.60 less than he should have received under the said act of Congress, which was the act which governed the compensation to be paid for mileage at that time.

"3. That the respondents have refused, and still do continue to refuse, to pay the petitioner, or to credit him with, the sum of $288.60, that being the amount remaining unpaid on the said travel under the said act of Congress.

"4. That there is no application of the statute of limitations, for the claim was adjusted and disallowed by Comptroller Maynard on February 2, 1887, the said disallowance being a clear violation of the said act of Congress.

"Therefore, the said travel having been performed, the distance having been correctly computed, the application of the said act of Congress to the said travel—under the acts of Congress, Rev. Stat. (1878), sections 273, 277, prescribing the duties of the accounting officers—is a mere ministerial duty,

the exercise of a discretion being invalid under the said sections.

"Wherefore the petitioner prays that a writ of mandamus may be issued to the said respondents, commanding them to audit the petitioner's account for the said travel and allow the same, and to issue a warrant in the manner it is the custom of the Treasury to issue warrants for the payment of mileage under the said act of Congress of March 3, 1835, the same being mandatory upon the accounting officers."

A rule to show cause was thereupon entered, and the defendants appearing, it was agreed that the petition and rule to show cause should be considered and treated as an alternative writ of mandamus, to which the respondents might make answer or demur as they might be advised. The respondents accordingly demurred, their demurrer being accompanied by the following:

"NOTE.— Among the matters of law relied upon and to be argued in support of the above demurrer are —

"1st. That mandamus will not lie against an officer of the Treasury Department for refusal to allow and pay a claim against the United States; for, however obviously without legal justification his refusal may be, a mandamus against him to compel such allowance and payment is none the less in effect a suit against the United States.

"2d. That it appearing that the relator's claim had been disallowed by the predecessor in office of the respondent Gilkeson, (to wit, Second Comptroller Maynard,) and there being no allegation of the production before the respondents of new-discovered material evidence, or that the original disallowance involved errors of computation, it is not competent for these respondents to reopen the settlement involving such disallowance."

The cause was heard by the Supreme Court of the District sitting in general term, and judgment rendered denying the relief sought, and dismissing the petition. The pending writ of error was thereupon sued out.

*Mr. R. Mason Lisle* in person, (with whom was *Mr. J. Edward Carpenter* on the brief,) for plaintiff in error.

*Mr. Assistant Attorney General Maury* for defendant in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

As the matter in dispute does not reach the jurisdictional sum or value, it is contended that this court has jurisdiction to entertain the writ of error because " the validity of an authority exercised under the United States " was drawn in question in the case. 23 Stat. 443, c. 355.

The claim of the relator arises under the last clause of section 2 of the act of March 3, 1835, entitled " An Act to Regulate the Pay of the Navy of the United States," 4 Stat. 755, 757, c. 27, which reads : " It is hereby expressly declared that the yearly allowance provided in this act is all the pay, compensation, and allowance that shall be received under any circumstances whatever, by any such officer or person, except for travelling expenses when under orders, for which ten cents per mile shall be allowed."

By section 273 of the Revised Statutes it is provided that: " It shall be the duty of the Second Comptroller : First. To examine all accounts settled by the Second, Third, and Fourth Auditors, and certify the balances arising thereon to the Secretary of the Department in which the expenditure has been incurred. Second. To countersign all warrants drawn by the Secretaries of War and of the Navy, which shall be warranted by law."

And by section 277 : " The duties of the Auditors shall be as follows : . . . Fifth. The Fourth Auditor shall receive and examine all accounts accruing in the Navy Department or relative thereto, and all accounts relating to Navy pensions; and, after examination of such accounts, he shall certify the balances, and shall transmit such accounts, with the vouchers and certificate, to the Second Comptroller for his decision thereon."

Section 236 provides : " All claims and demands whatever by the United States or against them, and all accounts what-

ever in which the United States are concerned, either as
debtors or as creditors, shall be settled and adjusted in the
Department of the Treasury."

By the act establishing the offices of Comptroller and Audi-
tor, the former was authorized and required " to superintend
the adjustment and preservation of the public accounts," and
" to examine all accounts settled by the Auditor; " and it was
made the duty of the latter " to receive all public accounts,
and after examination to certify the balance, and transmit the
accounts with the vouchers and certificate to the Comptroller
for his decision thereon." 1 Stat. 66.

Considering the accepted definition of an auditor with the
language used in these provisions, the Fourth Auditor may be
correctly said to be authorized to examine accounts accruing in
the Navy Department, compare the items with the vouchers,
allow or reject charges, and state the balance; and the Comp-
troller has authority to revise the action of the Auditor and
certify the balances finally found by him.

It is stated in the opinion delivered by Mr. Chief Justice
Waite in *United States* v. *Graham*, 110 U. S. 219, 220, cited
on behalf of relator, that it was found as a fact in that case
" that on the 6th of April, 1835, which was only a little more
than a month after the act of 1835 passed, circular instruc-
tions were issued from the Treasury Department to the
effect that mileage at the rate of ten cents a mile was fixed
by law and should be paid for travelling expenses within
the United States, but that the usual and necessary passage
money actually paid by officers returning from foreign service,
under orders or on sick ticket, when they could not return in
a public vessel, would be paid as theretofore, as well as the
like expenses of officers going out. The navy regulations
adopted in 1865, and in force in 1872, when the claim of
Graham, the appellee, accrued, provided that ' for travelling
out of the United States the actual expenses only are allowed.'
It is also found that from the time of the passage of the act
of 1835 until the decision of Temple's case in this court, the
Navy and Treasury Departments had, with a single exception,
always held that the ten cents a mile did not apply to travel

to, from, or in foreign countries, but only to travel in the United States. In Temple's case the long continued practice in the Departments was relied on to justify the decision of the accounting officers of the Treasury against him, but the fact of the actual existence of the practice was not found as it has been now."

The decision in *United States* v. *Temple*, 105 U. S. 97, was announced at October term, 1881. That case brought under consideration the act of Congress of June 30, 1876, relating to the mileage of officers of the Navy, while Graham's case arose under the act of March 3, 1835, and it was held that, as the language of the statute in each instance was clear and precise and its meaning evident, there was no room for construction, and that eight cents a mile in the one case and ten cents in the other, was properly allowed the claimants by the Court of Claims, from whose judgments in their favor appeals were prosecuted to this court.

It is now argued that the duty of the Fourth Auditor and of the Second Comptroller, under the last clause of section 2 of the act of 1835 and the decision of this court in relation to it, was merely ministerial, and that by the disallowance of relator's claim for mileage these officers exercised a discretion which they did not possess; that this was an invalid exercise of an authority under the United States; and that hence the validity of the authority was drawn in question. In order to justify this position, however, the validity of the authority must have been drawn in question directly and not incidentally. The validity of a statute is not drawn in question every time rights claimed under such statute are controverted, nor is the validity of an authority, every time an act done by such authority is disputed. The validity of a statute or the validity of an authority is drawn in question when the existence, or constitutionality, or legality of such statute or authority is denied, and the denial forms the subject of direct inquiry.

We think that the authority of the Second Comptroller and the Fourth Auditor is not thus denied here, nor the validity of that authority questioned, but that what is claimed is that in the exercise of a valid authority, the Auditor and Comptroller

erred in respect to an allowance, in view of the decision of this court in another case.

In *Decatur* v. *Paulding*, 14 Pet. 497, 515, it was remarked by Mr. Chief Justice Taney that the duties to be performed by the head of an executive · department of the government, whether imposed by act of Congress or by resolution, are not, in general, mere ministerial duties; that departmental duties are executive in their nature; that the laws and resolutions of Congress under which the departments are required to act have to be expounded in the exercise of judgment; and that, while the court would not be bound to adopt the construction given, when departmental decisions are under · review in a proper case, the court would not by mandamus control the exposition of statutes by direct action upon executive officers.  · In relation to the interpretation of a pension law by the Commissioner of Pensions and the Secretary of the Interior, in *United States ex rel. Dunlap* v. *Black, Commissioner*, 128 U. S. 40, 48, Mr. Justice Bradley said: " Whether, if the law were properly before us for consideration, we should be of the same opinion, or of a different opinion, is of no consequence in the decision of this case."

The contention of the relator is, that the interpretation he puts upon the act is too obviously correct to admit of dispute, and that this court has so decided; but it does not follow, because the decision of the Comptroller and Auditor may have been erroneous, that the assertion of relator to that effect raises a cognizable controversy as to their authority to proceed at all.   What the relator sought was an order coercing these officers to proceed in ·a particular way, and this order the Supreme Court of the District declined to grant.   If we were to reverse that judgment upon the ground urged, it would not be for want of power in the Auditor to audit the account, and in the Comptroller to revise and pass upon it, but because those officers had disallowed what they ought to have allowed and erroneously construed what needed no construction.   This would not in any degree involve the validity of their authority.   *Snow* v. *United States*, 118 U. S. 346, 353; *Baltimore and Potomac Railroad Co.* v. *Hopkins*, 130 U. S. 210.   In

*Clayton* v. *Utah Territory*, 132 U. S. 632, the power vested in the governor of the Territory of Utah by the organic act, to appoint an auditor of public accounts, was drawn in question; and in *Clough* v. *Curtis*, 134 U. S. 361, 369, the lawful existence, as the legislative assembly of the Territory of Idaho, of a body of persons claiming to exercise as such the legislative power conferred by Congress, was controverted. In *Neilson* v. *Lagow*, 7 How. 772, 775, and 12 How. 98, the plaintiff in error claimed the land in dispute through an authority exercised by the Secretary of the Treasury, and the State court decided against its validity. The existence or validity of the authority was primarily involved in these cases, and they contain nothing to the contrary of our present conclusion.

Why the relator did not bring suit in the Court of Claims does not appear, nor does the record show the reasons of the Second Comptroller for rejecting this claim in 1887, nor for the action of the present Auditor and Comptroller other than as indicated in the demurrer. These matters are, however, immaterial in the view which we take of the case.

The writ of error must be dismissed and it is

*So ordered.*