This case comes here on a writ of review of a judgment of the Circuit Court of Cole County affirming an order of the Public Service Commission.
The complaint filed with the Commission, upon which its order was based, is as follows:
"Now comes the Commercial Club of Mountain Grove, Missouri, and respectfully shows to the Commission that this club is a voluntary organization of the business men and citizens of the city of Mountain Grove, organized for the development of said city. Your petitioner further states that at a regular meeting of said commercial club the undersigned, A.F. Collier, was appointed chairman of a committee for the purpose of instituting the necessary proceedings to cause the St. Louis-San Francisco Railroad to regularly stop trains Nos. 105 and 106 at Mountain Grove, Missouri. *Page 394 
"Your petitioner further states that the St. Louis-San Francisco Railroad is a corporation organized under the laws of the State of Missouri and is engaged in the operation of a line of railroad between points in Missouri and points in the States of Arkansas, Kansas, Oklahoma, etc., and specifically that it operates a line of railroad from Kansas City, Missouri, through Springfield, Missouri; thence through Webster, Wright, Texas, Howell and Oregon counties, to points in Arkansas and other states, and that said line of railroad passes through Mountain Grove, Missouri. That in operation of such line of railroad said company is a common carrier engaged in the transportation of freight and passengers for hire, as defined by the laws of the State of Missouri. That at the present time the properties of said St. Louis-San Francisco Railroad are under the control of and being operated by Walker D. Hines as Director General of Railroads, United States Railroad Administration, under and by virtue of an appointment by the President of the United States, and he is responsible for the operation of the trains of said co-defendant at the present time.
"For cause of action your petitioner shows that Mountain Grove, Missouri, is an important and growing city in the southern part of the State of Missouri and that the passenger traffic in and out of said point is extremely heavy, and that the proper growth and development of Mountain Grove, Missouri, is dependent upon better passenger service being furnished than is now operated by the defendants herein.
"Your petitioner further alleges that for a long time past the defendant company did stop trains Nos. 105 and 106 at Mountain Grove, Missouri, on flag, for passengers to and from Springfield on the west, and for passengers to or from certain points south, but about sixty days ago a change in train schedules was made by said St. Louis-San Francisco Railroad, and as a result thereof trains Nos. 105 and 106 do not now stop at Mountain Grove, to the detriment of your petitioners and the city of Mountain Grove." *Page 395 
The prayer was for a hearing to enable the petitioner to show the necessity for the regular stopping of said trains, and such order or orders in the premises as appeared proper to the Commission.
To this complaint the railroad filed its separate answer, denying that it had anything to do with the operation of said railroad, and averred that since January 1, 1918, it is now and has been continuously operated by the Director General of Railroads appointed as such by the President of the United States.
The Director General filed a separate answer, in which, among other admissions, is the following:
"Defendant admits that prior to the 17th day of November, 1918, Train No. 105 on said St. Louis-San Francisco Railroad was stopped at Mountain Grove, Missouri, on flag, for passengers destined to Memphis, Tennessee, and points south and east of said latter point, and that Train No. 106 on said St. Louis-San Francisco Railroad was stopped at Mountain Grove, Missouri, on flag, for passengers destined to points north and west of Springfield, Missouri, and admits that on or about said date a change in schedule was made, as a result whereof said trains Nos. 105 and 106 do not now stop at Mountain Grove, Missouri, on flag, but denies that said change in schedule or the failure to stop said trains 105 and 106 at Mountain Grove is to the detriment of complainant or to the detriment of said city of Mountain Grove.
"Further answering, defendant states that this defendant now operates, in addition to trains Nos. 105 and 106, four passenger trains daily on said St. Louis-San Francisco Railroad, through said city of Mountain Grove, all which trains, except trains Nos. 105 and 106, are scheduled and do stop at Mountain Grove. The schedule of said trains at Mountain Grove is as follows:
"South-bound No. 101 ........... 11:05 P.M. " No. 103 ........... 10:30 A.M. "North-bound No. 102 ........... 4:45 A.M. " No. 104 ........... 5:45 P.M. *Page 396 
"Defendant further avers that the service provided by said passenger trains which now stop at Mountain Grove, Missouri, as aforesaid, is reasonably adequate to afford all necessary accommodations for the traveling public to get in and out of Mountain Grove.
"Further answering, defendant states that said trains Nos. 105 and 106 are interstate trains operating between Kansas City, Missouri, and Memphis, Tennessee, as well as Birmingham, Alabama, with connecting lines for the interchange of interstate passengers and express traffic, and the handling of the United States mails; that the elimination of the stops of said trains on flag at Mountain Grove, Missouri, was to enable said trains to maintain said schedule and to make necessary connections at the points aforesaid with trains on other lines of railroad; and that for this Commission to grant the relief prayed for in the complaint would directly burden and interfere with interstate commerce, and would conflict with Section 8 of Article 1 of the Constitution of the United States; Section 21 of Article II of the Constitution of Missouri, and Section 30 of Article II of same Constitution, and Section I of Article XIV of the Amendments to the Constitution of the United States."
Upon the issues thus made a hearing was had before the Public Service Commission and the following order was made, and affirmed by the Circuit Court of Cole County:
"Ordered: 1. That defendant, the St. Louis-San Francisco Railroad, provide for the stopping of its south-bound train No. 105 at Mountain Grove, Missouri, for the purpose of taking on and discharging passengers at that point.
"Ordered: 2. That defendant, the St. Louis-San Francisco Railroad, provided for the stopping of north-bound train No. 106 at Mountain Grove, on flag or at signal, for the purpose of letting off passengers who boarded said train south of the Arkansas line, and for the purpose of taking on passengers holding tickets for points beyond Springfield, Mo." *Page 397 
Motion for rehearing, charging that the conclusion of the Commission on all the defenses pleaded in the answer of appellant and the assignment that the evidence was insufficient to support said finding, was filed and overruled.
I. Appellant complains that the Commission erred in appointing A.Z. Patterson, general counsel of theHearing Before Commission, as special examiner to conduct theGeneral Counsel. hearing of said cause, for the reason, it is alleged, that such appointment was unauthorized and without the authority of law.
Without passing upon the propriety or strict legality of Patterson's appointment, we think it is apparent that appellant has not been injured thereby and, for this reason, the complaint ought to be overruled.
II. The question of whether or not the order of the Commission as affirmed by the circuit court imposes anInterference With undue burden on interstate commerce is aInterstate Commerce. vital one to be determined under the facts in this case.
In the case of Chicago, Burlington Quincy Ry. Co. v. Railroad Commission of Wisconsin, 237 U.S. 220, l.c. 226, it is held as follows:
"In reviewing the decision we may start with certain principles as established: (1) It is competent for a state to requireadequate local facilities, even to the stoppage of interstatetrains or the re-arrangement of their schedules. (2) Such facilities existing, that is, the local conditions being adequately met, the obligation of the railroad is performed, and the stoppage of interstate trains becomes an improper and illegal interference with interstate commerce. (3) And this, whether the interference be directly by the legislature or by its command through the orders of an administrative body. (4) The fact oflocal facilities this court may determine, such fact beingnecessarily involved in the determination of the Federal questionwhether an order concerning *Page 398 an interstate train does or does not directly regulateinterstate commerce, by imposing an arbitrary requirement."
(Italics ours).
To the same effect are the cases of Gladson v. Minnesota,166 U.S. 427; Lake Shore Railroad v. Ohio, 137 U.S. 285; Atlantic Coast Linc v. N.C. Corp. Comm., 206 U.S. l.c. 1; Mo. Pac. Ry. v. Kansas, 216 U.S. 262; Cleveland C. Ry. v. Illinois,177 U.S. 514; Mississippi Ry. Comm. v. Ill. Cent. Railroad, 203 U.S. 335; Atlantic Coast Linc v. Wharton, 207 U.S. 328; State ex rel. v. Publ. Serv. Comm., 277 Mo. 175.
Following the doctrine of the above authorities a correct conclusion upon the facts of the instant case will lead to a proper result in its determination.
"It must be constructed as a suit in equity, and we make our own finding of facts." [State ex rel. M.K. T. Ry. v. Publ. Serv. Comm., 277 Mo. l.c. 193; State ex rel. v. Publ. Serv. Comm., 271 Mo. 155; Publ. Serv. Comm. Act, Laws 1913, sec. 111.]
Looking then to the evidence, as disclosed by the record, what is shown by the testimony of the sixteen witnesses and the exhibits offered? We have carefully read and re-read the evidence offered by both side to the controversy, and we have reached the conclusion that it justifies the order made. Without setting out the testimony in full, it is sufficient to say that it shows Mountain Grove to be a city of 2500 inhabitants; that two State institutions, the Fruit Experiment Station and the Poultry Station, both of which are maintained by the State at an expenditure of $200,000 every two years, are located there; that these institutions are visited yearly by 700 people from this and surrounding states and the inconvenience in getting in and out is very great; that local trains 101 and 103 out of Springfield to Mountain Grove are invariably crowded as far as Seymore, a short distance north of Mountain Grove, and many men, women and children are compelled to stand on account of being unable to get seats until that point is passed. The testimony shows that if additional coaches were put *Page 399 
on these trains the congestion would be relieved, but that has not been done. It shows that Mountain Grove is a sort of gateway for a scope of territory extending about 35 miles north and northeast and the same distance south and southwest; people come there to board trains, to get freight and to ship out stuff for other points. Interstate trains 105 and 106, prior to November the 17th, 1918, did stop at Mountain Grove, on flag, for passengers to or from Springfield on the west and for passengers to or from certain points south; that during that period the service was good, in that it furnished the people who desired to get out and those who desired to come in a reasonably convenient way of doing so, but since the discontinuance of these trains much hardship has resulted. It shows that while said trains were operated on flag at Mountain Grove from 1 to 8 passengers daily got off of No. 105. The proof shows that the shipments and products of Mountain Grove per annum are creamery products, butter and soda water, $900,000; chickens and eggs, $300,000; lumber, $100,000; cattle, hogs and mules, $100,000; grain and hay, $100,000; that it has three banks whose capital aggregate more than $800,000, and a number of wholesale houses which aid in supplying the necessities of country stores and the territory above mentioned. It shows that said trains 105 and 106, in taking the mail at Mountain Grove, slow down to a speed almost amounting to a stop and so that a person could if allowed get on and off. Appellant's assistant superintendent testified that it would require five minutes to stop and get the train going again, to which would be added whatever time the train stood at the station; he stated also that if everything was favorable and nothing unusual took place the five minutes could be regained between Mountain Grove and Memphis. The general superintendent of appellant testified that it was his understanding — he didn't know whether he was correct, but ultimately said he was — that prior to the 17th day of November, 1918, the Rock Island, one of the Kansas City connections, moved up its time of leaving fifteen *Page 400 
minutes, arbitrarily but he would not say that, if the train missed its connection with the Rock Island, it was caused by reason of having to stop at Mountain Grove. When asked why he called said trains through trains when they stopped at Paola, Fort Scott and LyCygne, he answered: "We don't make any stops on those trains that we feel we don't have to or are justified." He further stated that through passenger traffic and local passenger traffic is based upon what the railroad would consider they would be justified in doing.
As stated above we think the foregoing facts are ample to justify the orders made.
III. In our opinion the constitutional questions raised are not applicable under the facts and it is, therefore, unnecessary to pay further attention to them.
IV. It is contended by the appellant that the proceedings should have been dismissed as to the railroad company.
The proceedings had in the case were against both the railroad company and Walker D. Hines, Director General of Railroads, who, at the time, was operating said railroad in pursuance of an Act of Congress of March 21, 1918. Section 10 of said act provides as follows:
"That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government." [Muir v. L. N.R. Co., 247 Fed. l.c. 896.]
This section clearly authorizes the bringing of suits against the carrier, either at law or in equity, and the *Page 401 
rendition of judgments therein, and prohibits the carrier from making the defense thereto that it is an instrumentality or agency of the Federal Government, and it is manifest that the exceptions mentioned therein have no application here.
The order is a continuing one until lawfully changed and, in my judgment, would apply to the railroad company. In the case of Publ. Serv. Comm. v. St. Louis, I.M. S. Ry. and B.F. Bush, its receiver, and St. Louis, San Francisco Railroad Co., and James W. Lusk et al., its receivers, 218 S.W. (Mo.) 310, an order went against each company and its receivers. The appellants were the successors in each instance of the receivers, and it was held that both companies were bound by the order of the Commission.
This court will take judicial notice that the wartime Federal control of railroads terminated in the first part of the year 1920, and the roads which had, in fact during the entire time, been operated for the corporation by the Director General, were turned back to the corporations.
It would be an intolerable situation if, because the St. Louis-San Francisco Railroad was being temporarily operated by the Director General, no judgment could be rendered against it and when the Government operation terminated the corporation would not be bound by the order made. We do not think such situation is justified, under the facts of this case, or under the law, and we, therefore, overrule the contention.
The judgment of the court below sustaining the order of the Commission should be affirmed. It is so ordered. Railey andWhite, CC., concur.