**HAMMOND v. HULL et al.**

No. 7871.

United States Court of Appeals for the District of Columbia.

Decided Oct. 12, 1942.

Mr. George W. Dalzell, of Washington, D. C., for appellant.

Mr. John L. Laskey, Assistant United States Attorney, with whom Mr. Edward M. Curran, United States Attorney, both of Washington, D. C., was on the brief, for appellees.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

Appellant became a Foreign Service Officer of the United States on or about March 22, 1939. He served as Vice-Consul in Vienna from April 3, 1939 to October 31, 1939; as Vice-Consul in Leipzig, from November 1, 1939 to February 21, 1940; he was then transferred to the Foreign Service Officers' Training School at the Department of State in Washington, D. C., from which he was graduated in June, 1940. From June, 1940 until December 27, 1940, he was assigned to duty in the Division of Cultural Relations of the Department of State. From December 27, 1940 until the filing of his complaint in the present case, appellant was on leave of absence. Under date of March 7, 1941, he was officially notified that he had been given an efficiency rating of unsatisfactory. In a letter of the same date, he was assigned as Vice-Consul at Montreal and instructed to proceed to that post upon the expiration of his leave of absence. He was also notified that after a reasonable period of service at his new post, his rating would be further considered. On March 14, 1941, appellant acknowledged receipt of the foregoing notification of rating. In the same letter he served notice upon appellee Shaw "that the purported rating of me as 'unsatisfactory' is strictly illegal." In a letter dated March 16, 1941, appellant notified appellee Hull that unless he was informed not later than 1:00 P.M. on March 18, 1941 "whether the Department desires an amicable adjustment without litigation, * * *" he would instruct his attorneys to institute an action. On March 18, 1941, before the expiration of his leave, appellant filed his complaint in the present case; seeking mandatory[1] and injunctive relief, and a judgment declaring appellant's rights, together with a motion for temporary restraining order. On March 24, 1941, appellees moved to strike the complaint and to dismiss it. On March 29, 1941, the District Court found that appellant's complaint was redundant and prolix and, hence, might properly be stricken, but it avoided basing its decision on that ground and, instead,

---

[1] "Wherefore Plaintiff Demands: * * * 2. A final mandatory order commanding and directing defendants (1) to accord plaintiff his full statutory and constitutional rights under Sections 23h and 23i of Title 22 of the United States Code [22 U.S.C.A. §§ 23h, 23i] and (2) to determine after full hearing accorded plaintiff the truth or falsity of the two alleged stories concerning plaintiff, that is to say, (a) whether plaintiff did in fact mimick the President of the United States as charged, and (b) whether the plaintiff did in fact have disloyal dealings with one Lilly Stein, an alleged female agent of a foreign government."

granted the motion to dismiss on two grounds, first, because the suit was prematurely brought and, second, because the complaint failed to state a cause of action for the relief prayed by appellant. Judgment dismissing the complaint and denying appellant's motion for temporary restraining order was filed on March 31, 1941. This appeal followed.

The remedy which, before adoption of the new Rules of Civil Procedure, was known as mandamus, is available under the new rules [2] and is governed by the same principles as formerly governed its administration.[3] Those principles may be briefly summarized as follows: (1) The writ should be used only when the duty of the officer to act is clearly established and plainly defined and the obligation to act is peremptory.[4] (2) The presumption of validity attends official action, and the burden of proof to the contrary is upon one who challenges the action.[5] (3) Courts have no general supervisory powers over the executive branches or over their officers,[6] which may be invoked by writ of mandamus. Interference of the courts with the performance of the ordinary duties of the executive departments of the government would be productive of nothing but mischief.[7] (4) When the performance of official duty requires an interpretation of the law which governs that performance, the interpretation placed by the officer upon the law will not be interfered with, certainly, unless it is clearly wrong and the official action arbitrary and capricious.[8] (5) For it is only in clear cases of illegality of action that courts will intervene to displace the judgments of administrative officers or bodies.[9] (6) Generally speaking, when an administrative remedy is available it must first be exhausted before judicial relief can be obtained,[10] by writ of mandamus or otherwise.

The judgment of the District Court dismissing appellant's complaint must be affirmed unless the action of appellees was clearly a violation of some provision of law, or unless they failed to observe and carry out the procedure provided by law.[11]

[2] Fed.Rules Civ.Proc., Rule 81(b); National Bondholders Corp. v. McClintic, 4 Cir., 99 F.2d 595, 598.

[3] George Allison & Co., Inc., v. Interstate Commerce Commission, 70 App.D.C. 375, 376, 107 F.2d 180, 181; Levine v. Farley, 70 App.D.C. 381, 383, 107 F.2d 186, 188.

[4] United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 543, 57 S.Ct. 855, 81 L.Ed. 1272; Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 219, 50 S.Ct. 320, 74 L.Ed. 809; United States ex rel. White v. Coe, 68 App.D.C. 218, 219, 95 F.2d 347, 348, and authorities there cited; Brunswick v. Elliott, 70 App.D.C. 45, 49, 103 F.2d 746, 750.

[5] Proctor & Gamble Co. v. Coe, 68 App.D.C. 246, 249, 96 F.2d 518, 521, and authorities there cited; Dunn v. Ickes, 72 App.D.C. 325, 326, 115 F.2d 36, 37.

[6] Keim v. United States, 177 U.S. 290, 292, 293, 20 S.Ct. 574, 44 L.Ed. 774; Doehler Metal Furniture Co., Inc., v. Warren, — App.D.C. —, 129 F.2d 43; 3 Pike and Fischer, Admin.Law, 72b.2-1.

[7] Decatur v. Paulding, 14 Pet.* 497,* 516, 10 L.Ed. 559; Keim v. United States, 177 U.S. 290, 293, 20 S.Ct. 574, 44 L.Ed. 774; Levine v. Farley, 70 App.D.C. 381, 385, 107 F.2d 186, 190; Perkins v. Lukens Steel Co., 310 U.S. 113, 131, 132, 60 S.Ct. 869, 84 L.Ed. 1108.

[8] Bates & Guild Co. v. Payne, 194 U.S. 106, 108, 109, 24 S.Ct. 595, 48 L.Ed. 894; United States ex rel. Dunlap v. Black, 128 U.S. 40, 48, 9 S.Ct. 12, 32 L.Ed. 354; Perkins v. Lukens Steel Co., 310 U.S. 113, 125, 127, 60 S.Ct. 869, 84 L.Ed. 1108; United States ex rel. Ness v. Fisher, 223 U.S. 683, 691–694, 32 S.Ct. 356, 56 L.Ed. 610; United States ex rel. Riverside Oil Co. v. Hitchcock, 190 U.S. 316, 324, 325, 23 S.Ct. 698, 47 L.Ed. 1074; United States ex rel. Hall v. Payne, 254 U.S. 343, 347, 348, 41 S.Ct. 131, 65 L.Ed. 295; United States v. Lynch, 137 U.S. 280, 286, 11 S.Ct. 114, 34 L.Ed. 700; Commercial Solvents Corp. v. Mellon, 51 App.D.C. 146, 150, 277 F. 548, 552.

[9] Proctor & Gamble Co. v. Coe, 68 App.D.C. 246, 249, 96 F.2d 518, 521, and authorities there cited.

[10] Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 123, 46 S.Ct. 215, 70 L.Ed. 494; Red River Broadcasting Co., Inc., v. Federal Communications Commission, 69 App.D.C. 1, 3, 6, 98 F.2d 282, 284, 287, and authorities there cited; Mallory Coal Co. v. National Bituminous Coal Commission, 69 App.D.C. 166, 174, 99 F.2d 399, 407; Farley v. Abbetmeier, 72 App.D.C. 260, 267, 114 F.2d 569, 576; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50, 51, 58 S.Ct. 459, 82 L.Ed. 638; Alexander v. State Personnel Board, Cal.App., 124 P. 2d 338, 339, 340.

[11] Levine v. Farley, 70 App.D.C. 381, 385, 107 F.2d 186, 190.

The pertinent sections of the statute are found in Title 22 of the United States Code; particularly Sections 23f, g, h, i.[11a] In Section 23h it is provided that: "* * * Not later than November 1, at least every two years, the Division of Foreign Service Personnel shall, under the supervision of the Assistant Secretary of State, prepare a list in which all Foreign Service officers shall be graded in accordance with their relative efficiency and value to the service. In this list officers shall be graded as excellent, very good, satisfactory, or unsatisfactory, with such further subclassification as may be found necessary."

Appellant relies upon the following sentence, which appears in Section 23h: "* * * No charges against an officer that would adversely affect his efficiency rating or his value to the service, if true, shall be taken into consideration in determining his efficiency rating except after the officer shall have had opportunity to reply thereto." Assuming that charges had been made against appellant, still, his complaint and exhibits demonstrate not only that an opportunity was given him to reply, but that he did reply. In his complaint appellant alleged: "9. Immediately after this interview of October 31, 1940 with the said Berle plaintiff under the direction of counsel and friends proceeded to collate such ex parte proof as was available to him to show the falsity and viciousness of these two alleged stories and appended this material and the affidavits in support thereof to an affidavit of his own verified November 14, 1940 and transmitted the same forthwith to the Division of Foreign Service Personnel as he had been requested on November 8, 1940 so to do by the defendant Shaw. Said affidavits to which plaintiff refers are all contained in Exhibit A already referred to in paragraph 8 hereof, which Exhibit A demonstrates fully the falsity of the two stories related to plaintiff by the said Berle." Exhibit A, to which reference is made, includes (1) the following letter, dated November 14, 1940, from appellant to appellee Shaw: "Dear Mr. Shaw: Enclosed herewith is a copy of an affidavit which I have executed *in reply to certain charges against me which I understand are under consideration* by the Division of Foreign Service Personnel. Originals of certain other affidavits are attached to my enclosed affidavit, which may be necessary for my further use in this matter. If such further use should ever be necessary, I reserve the right to call for the originals of these affidavits. Very sincerely yours, Ogden H. Hammond, Jr." [Italics supplied]; (2) an affidavit executed by appellant which occupies eleven pages in the record; (3) an affidavit executed by Lilly Stein; (4) an affidavit executed by Grace Vanderbilt Stevens; (5) an affidavit executed by Adelaide Whitehouse; (6) a letter from appellant to appellee Berle, reading as follows: "Dear Mr. Berle—I have rarely been so touched as by your kindness in handling this nasty mess. The fact that I have taken up so much of your time and that you have been worried about this matter since February is something that I shall not lightly forgive myself for—that any irresponsible behavior of mine should occupy your mind in times like these gives me the only guilty feeling I have in this entire matter. I have only asked for time in this affair in order to be perfectly composed and to finish this slur on something beyond my career. Again I shall never forget this and only hope that in some way, however small, some day I shall be able to repay it. Sincerely, Ogden H. Hammond, Jr."

Appellees' position is that appellant's rating of unsatisfactory was the result of a review of his service record and not of charges. The District Court found that: "No charge was filed by or before the Board of Foreign Service Personnel against the plaintiff that adversely affected his efficiency rating or his value in the service or otherwise." This finding is amply supported by appellant's Exhibit G, which was attached to his complaint, a letter dated March 7, 1941, from appellee Shaw to appellant which reads in part as follows: "It has been determined *from a review of your record* as a foreign service officer that your efficiency rating is unsatisfactory * * *." [Italics supplied]

Appellees concede that an efficiency rating of unsatisfactory based on charges against a foreign service officer could only be made after the officer had been accorded a hearing on the charges. They probably concede too much. The statute provides merely that "the officer shall have had opportunity to *reply thereto.*" [Italics supplied] Opportunity to reply does not necessarily contemplate a

---

11a 22 U.S.C.A. §§ 23f–23i.

hearing.[12] The spirit and purpose of the particular law here involved would seem to require that at this stage of administrative proceedings a hearing, in the sense contended for by appellant, was not intended.[13] This conclusion is strengthened by the provisions of Section 23i, in which the following language appears: "Whenever [1] it is determined that the efficiency rating of an officer is unsatisfactory, thereby meaning below the standard required for the service, [2] and such determination has been confirmed by the Secretary of State, [3] the officer shall be notified thereof, [4] and if, after a reasonable period to be determined by the circumstances in each particular case, [5] the rating of such officer continues to be found unsatisfactory [6] and such finding is confirmed by the Secretary of State *after a hearing accorded* the officer, [7] such officer shall be separated from the service * * *." [Numbers in brackets and italics supplied] It seems obvious, upon careful reading of the foregoing language, that no hearing, of the kind contended for by appellant, is contemplated by the statute prior to the happening of the first five events. Only after the time arrives when, because of a continuing unsatisfactory rating, there is danger of separation of an officer from the service, does the statute provide for a hearing. At this point the permanent character of his service and his security of position are challenged. Consequently, he is then given an opportunity to present his case at a hearing and have it passed upon by the Secretary. This is a procedure which should be availed of only as a last resort. Prior to that time the good of the service requires avoidance of an open issue, publicly contested, between the Department and the officer. So long as there is any reasonable possibility of harmonious relationship between such an officer and the Board of Foreign Service Personnel, their negotiations should be carried on without publicity, without charges or hearings.

The history of legislation affecting the foreign service reveals a definite purpose to provide security of tenure and to encourage career service on a substantial basis.[14] But the history and tradition of the service also discloses the necessity for the highest possible standards of performance; that the selection and training of its officers must emphasize intelligence, good judgment, discretion, and a capacity for assumption of responsibility of which many persons are incapable.[15] It is obvious that

---

[12] Cf. Longfellow v. Gudger, 57 App. D.C. 50, 16 F.2d 653.

[13] H. R. Rep. No. 2702, 71st Cong., 3d Sess., 14: " * * * These sections have the approval of the Secretary of State and assure the continuance of policies with respect to personnel administration which have been tested and found by experience to be equitable and desirable, *without, however, placing any burdensome restraint upon the executive authority of the President and the Secretary of State over the Foreign Service.*" [Italics supplied]

Id. at 15: "This section contains a much needed provision establishing an equitable method for the involuntary retirement of unsatisfactory officers * * *. Adequate provision is made for *previous warning* concerning unsatisfactory work and *for granting a hearing to officers before such* involuntary separations." [Italics supplied]

Cf. Farley v. Abbetmeier, 72 App.D.C. 260, 267, 114 F.2d 569, 576.

[14] Lay, Foreign Service Reorganization, 18 Am.Pol.Sci.Rev. 697. See Lay, Foreign Service of the United States (1928) 19-25, 229-283; Sen. Rep. No. 1142, 67th Cong., 4th Sess.; H. R. Rep. No. 1479, 67th Cong., 4th Sess.; Sen. Rep. No. 532, 68th Cong., 1st Sess.; H. R. Rep. No. 157, 68th Cong., 1st Sess.; Sen. Rep. No. 1069, 70th Cong., 1st Sess.; H. R. Rep. No. 560, 71st Cong., 2d Sess.; H. R. Rep. No. 2702, 71st Cong., 3d Sess., 12-15.

[15] See generally, Lay, Foreign Service of the United States (1928) cc. X, XII, XIV; id. at ix, Foreword by Charles Evans Hughes: "The new diplomacy requires not the divining of the intent of monarchs, the mere discovery and thwarting of intrigues, but the understanding of peoples. There must be intimate acquaintance with their interests, their problems, the conflicts of parties, the course of opinion. There must be ability to sift; to seize upon what is significant in the mass of news, of rumors, of assertion, of debate; to know the character and particular aims of men who control the action of governments. For this, alertness and general adaptability will not suffice. One must have the equipment of the student of history and politics, and the democratic sympathies and cultural training which enable him to enter into the thoughts of peoples. And while he seeks to do this, he cannot es-

in this profession, as in others, mistakes will be made even by men of real capacity and of ideal temperament. In this profession, as in others, mistakes must bring discipline; and errors sometimes provide the basis for learning, just as surely as do the successes of professional life.

Putting a promising young professional man upon probation, following unwise or indiscreet actions, may well become an essential part of the process of training. His capacity to take such discipline and come up smiling may be one of the most revealing evidences of his worth to the service. Recalcitrancy, insolence and an inclination to challenge the authority of those who are in charge of that process may be most revealing of his incapacity and lack of fitness for the service. The discovery and appraisal of those intangibles of intelligence, temperament and good judgment, which are so vital in carrying on our foreign relations, can best be accomplished by informal procedures and informal contacts between the individual officer and the Division of Foreign Service Personnel. It is inconceivable that the morale of such an organization could be maintained on a proper basis if each young officer, in process of adjustment to a life which must of necessity be full of stresses and strains, could challenge the Division heads at each step of the process and require a public hearing, representation by counsel and all the elaborate ritual of trial and judicial determination, whenever he and his superior officers disagreed as to the manner in which his work should be done. And, consequently, it is inconceivable that Congress should have intended Section 23i to be so interpreted as to permit such a result.[16] The statute reveals clearly that the work of foreign service officers is of a highly confidential character.[17] The selection, training and classification of officers in this service must necessarily be done with great care. Section 23h expressly provides that: "The correspondence and records of the Division of Foreign Service Personnel shall be confidential except to the President, the Secretary of State, the members of the Board of Foreign Service Personnel, the Assistant Secretary of State supervising the division, and such of its employees as may be assigned to work on such correspondence and records."

In the present case, although the allegations of appellant's complaint charge malice, fraud, and other improper motives, the exhibits attached to the complaint reveal an entirely different situation. But, in any event, so long as the interpretation placed by an administrative officer upon the law is a reasonable one,[18] and so long as his conduct is both within the scope of his authority[19] and lacking in the elements of caprice and arbitrariness, his motive is immaterial.[20] In other words, the apparent incongruity of *malicious performance of duty,* assuming that malice actually exists, is not sufficient to deprive the performance of duty of its official character or to subject the officer to judicial interference in either his public or his private capacity. The attempt, in the present case, to establish a cause of action against appellees as individuals, on the

---

cape giving an impression of the life of his own country. *In no slight measure, by his own character and deportment, he determines the reputation of his government."* [Italics supplied]; id. at 229, Walter Hines Page: "'But the realness and the bigness of the job here in London is simply oppressive. We don't even know what it is in the United States, and, of course, we don't go about doing it right. If we did, we shouldn't pick up a green fellow from the plains of Long Island and send him here. We'd train the most capable male babies we have from the cradle.'"

[16] Cf. United States ex rel. Taylor v. Taft, 24 App.D.C. 95, 98, 99, writ of error dismissed, 203 U.S. 461, 27 S.Ct. 148, 51 L.Ed. 269.

[17] 22 U.S.C.A. §§ 23h, 126.

[18] United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 419, 51 S.Ct. 502, 75 L.Ed. 1148; United States ex rel. White v. Coe, 68 App.D.C. 218, 220, 95 F.2d 347, 349; Brunswick v. Elliott, 70 App.D.C. 45, 49, 103 F.2d 746, 750; Reichelderfer v. Johnson, 63 App.D.C. 334, 336, 72 F.2d 552, 554.

[19] United States ex rel. Nalle v. Hoover, 31 App.D.C. 311, 320.

[20] Cooper v. O'Connor, 69 App.D.C. 100, 105, 106, 99 F.2d 135, 140, 141, 118 A.L.R. 1440, and authorities there cited; Spalding v. Vilas, 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780: "* * * personal motives cannot be imputed to duly authorized official conduct."; United States v. 243.22 Acres of Land in Town of Babylon, Suffolk County, N. Y., 2 Cir., 129 F.2d 678.

theory that they were not acting in their official capacities, depends upon too obvious a fiction to merit serious consideration.[21]

We conclude, therefore, that regard for both the letter and the spirit of the statute requires affirmance of the District Court's decision.

Affirmed.

[21] Cooper v. O'Connor, 69 App.D.C. 100, 103–106, 99 F.2d 135, 138–141; Leuer v. McIntyre, Tex.Civ.App., 162 S. W.2d 158, 160; 2 Pike and Fischer, Admin. Law, 22d. 31-3: "Plaintiff invokes the obvious fiction that his suit is not one against defendants as members of the Local Draft Board, or to nullify acts done or attempted by them in their *official capacities* as members of the Board, but that it is merely a suit against them individually to nullify acts done by them in their *private capacities*. There is no merit in this contention. Plaintiff's every allegation was aimed at actions of defendants collectively, as members and officials of the Board; plaintiff's complaint being directed only at the manner in which defendants performed their official duties as members of the board, * * *. Any act done by the individual members of the Board in their private capacity towards fixing plaintiff's status * * * would of course be a nullity, without power to enforce, and nobody need pay any attention to them. But any act done by them collectively, in their official capacity, is a very different thing, and carries with it the usual presumption of validity incident to official acts of governmental agencies."