**John M. GYAKUM, Plaintiff,**

v.

**Fred A. SEATON, Secretary of the Interior, Department of the Interior, Conrad L. Wirth, Director of National Park Service, Department of the Interior, Edward J. Kelly, Superintendent, National Capital Parks, Department of the Interior, Harold F. Stewart, Chief, United States Park Police, Department of the Interior, Defendants.**

**Civ. A. No. 4572–56.**

United States District Court
District of Columbia.

Dec. 31, 1957.

Bernard Margolius, Carlton U. Edwards II, and Ralph H. Deckelbaum, Washington, D. C., for plaintiff.

Oliver Gasch, U. S. Atty., Edward P. Troxell, E. Riley Casey, Asst. U. S. Attys., Washington, D. C., for defendants.

MATTHEWS, District Judge.

By this action the plaintiff seeks to have the court compel the defendants to promote him to the rank of Lieutenant in the United States Park Police. He maintains that the Promotion Policy of the United States Park Police requires that a vacancy be filled by promotion of the highest numerically rated applicant. He says he is entitled to the promotion to Lieutenant as he attained the highest score on the examination conducted in February 1955. He further contends that he alone attained an eligible rating for this promotion but that contrary to the Promotion Policy 15 points were added to the scores of the applicants with the result that other names were improperly placed on the eligible list.

The defendants admit that the plaintiff received the highest score on the examination but they deny that he has a right to the promotion. They contend that a decision by the appointing official to make a promotion to Lieutenant is not a plain ministerial act but a function involving judgment and discretion and hence that the court may not direct the exercise of that judgment or discretion in a particular way. In short they say mandamus will not lie. They assert that the addition of 15 points to the scores of applicants was correct procedure under the circumstances.

From the time of the organization of the United States Park Police in 1919 until 1952—a period of about 33 years—all promotions were based solely on seniority in rank and service. Since then the trend has been toward promotions based on merit. In 1951 a competitive promotion system was set up to become operative in 1952. It provided that a Promotion Board "make promotions in all ranks below that of Captain". But the provision for the Promotion Board itself to make promotions was of short duration. Effective January 1, 1953 and at the time the plaintiff took the examination in 1955 the responsibility of the Promotion Board was to perform functions "with respect to the establishment of promotion registers from which the Superintendent of National Capital Parks will make recommendations to the Director for promotions in all ranks below Captain in the United States Park Police."

The Promotion Policy of the United States Park Police provides that a member of the force competing in examination for promotion must accumulate a total of 70 points as a passing grade before being eligible for promotion; that

to be eligible stated years of service must be attained; that an examination be held annually based on fitness, merit, experience, and a written examination; that promotion registers for advancement from (1) Private to Corporal, (2) Corporal to Sergeant, and (3) Sergeant to Lieutenant, will be compiled in the order of the highest numerical ratings; that examination grades will be referred to the Promotion Board for processing and will be made known to the applicants; that appeals from the actions of the Promotion and Examination Boards may be made by competitors, in writing, to the Superintendent within five days after receipt of ratings with right of further appeals to the Director of National Park Service, in writing, within five days after receipt of decisions of the Superintendent with provision that decisions of the Director will be final; and that the Superintendent of National Capital Parks will make recommendations to the Director of National Park Service from the promotion registers for promotions in all ranks below Captain.

Considerations will first be given to plaintiff's claim that he alone had a place on the eligible list for promotion to Lieutenant and that 15 points were improperly added to the scores of the applicants and resulted in the unjustified elevation of others to the eligible list. In connection with this claim a discussion of the applicable procedure is in order. The examination is divided into two main parts. One part is handled by the Promotion Board, and the other, that is, the written test, is conducted by the Examination Board. The Promotion Board gives each applicant a rating for fitness, merit and experience. The rating for fitness and merit is based on an evaluation by the Promotion Board of the officer's personnel record, training which increases his fitness, commendations, adverse reports, attendance record, suitability and personality. For the rating on experience the Promotion Board considers the years of satisfactory service of the officer on the United States Park Police force, in the military service, and under certain circumstances service on any other police force in the District of Columbia. An applicant may receive a maximum of 50 points for the part of the examination conducted by the Promotion Board. Likewise he may receive a maximum of 50 points on the written test conducted by the Examination Board. The written examination is designed to test the applicant in four fields, (1) knowledge of National Capital Parks Rules and Regulations and judgment in their application, (2) knowledge of the National Capital Park system, (3) general intelligence and ability in report writing and (4) general aptitude for the performance of supervisory functions. The written test grades are referred to the Promotion Board for processing and are amalgamated with the grades given by the Promotion Board.

A year prior to the examination here in question, that is, in 1954 after the examination of that year, an officer who had failed to pass the examination for promotion to Lieutenant complained of the written examination. He alleged that it was "not a true criterion of the applicant's knowledge of the park system, its facilities, services to the public, and the activities and programs scheduled in the park system under the sponsorship of the National Parks" and that "the examination as given was unreasonable, or the method of grading was improper". His suggestion was that the grade on the written portion only of the examination be increased by a certain percentage for each member taking the examination. This, he said, would elevate a majority of the applicants above the passing rating in order to be placed on the list of eligibles for promotion and "would present a more accurate picture of the actual scores attained." After a review of the written portion of the examination and the surrounding circumstances and consideration of the fact that there "were only a few who made the passing mark" an adjustment was made by adding 15 points to the score of each applicant.

This adjusting process is described by personnel specialists as follows:

"The raw scores were converted to percentage scores by adding fifteen points to the score of each individual."

After the 1955 examination which the plaintiff took for promotion to Lieutenant and in advance of publication of the roster it was discovered that the situation as to the written test was similar to that in 1954 as above related, and by way of adjustment 15 points were added to the score of each applicant as had been done in 1954. Following this adjustment the promotion register for eligibles for promotion to Lieutenant was certified by the Promotion Board. The first three candidates stood as follows: the plaintiff 86.8, Edwin Sutley 84.8, and Albert Krueger 83.4. If the adjustment had not been made the plaintiff's score on the examination as a whole would have been 71.8—a little above a passing rating, and none of the other eleven Sergeants taking the promotion examination for Lieutenant would have passed despite service by each of them of seven years or more on the United States Park Police force.

 The plaintiff having challenged the official action relative to the addition of 15 points, the applicable principle to be applied is as stated in Hammond v. Hull, 76 U.S.App.D.C. 301, at page 303, 131 F.2d 23, at page 25:

"The presumption of validity attends official action, and the burden of proof to the contrary is upon one who challenges the action."

It is the view of the court that the plaintiff has not sustained the burden of proving that the addition of the 15 points to the scores of candidates was improper or violative of the established Promotion Policy of the United States Park Police.

The remaining claim for consideration is that the Promotion Policy requires that a vacancy be filled by promotion of the highest numerically rated applicant. There is no statute or regulation of the Department of the Interior or Civil Service Commission requiring the promotion of the highest numerically rated candidate on the promotion register. The Promotion Policy of the United States Park Police providing for the establishment of promotion registers has no requirement that a promotion will or must be made of the highest numerically rated applicant. Nevertheless, the plaintiff grounds his claim to the promotion here involved on the Promotion Policy in the light of its purpose, interpretation and construction.

During the few years the Promotion Board functioned preceding the time of the present controversy the Superintendent of National Capital Parks, the Promotion Board, members of the Park Police force, and others, assumed that under the Promotion Policy only the top man on the eligible list could be recommended and appointed for promotion to vacancies in the force.

Accordingly, the Superintendent of the National Capital Parks in making recommendations to the Director of the National Park Service recommended for promotion the top men on the eligible list except in one instance when the top man relinquished "any claim in the matter of the contemplated appointment" whereupon the next highest numerically rated candidate was recommended for and received the promotion. Following the 1955 examination the Superintendent in June 1956 recommended the top men on the eligible list for promotion including the plaintiff for Lieutenant. Opposition to the plaintiff's contemplated promotion was then interposed by his superior—the Chief of the United States Park Police—who favored the promotion of the third highest numerically rated applicant, Sergeant Albert Krueger. Apparently this was the first time since the institution of the Promotion Policy that the Director—the appointing authority—was faced with a disagreement between subordinate officials as to the candidate he should promote. The Director took the position that a selection might properly be made by him from the top three on the regis-

ter in accordance with the policy of the National Park Service.[1]

Thereafter, on November 28, 1956 the Chief of the Park Police recommended the promotion of Sergeant Albert Krueger to the rank of Lieutenant and that recommendation was endorsed and its approval recommended by the Superintendent and was approved by the Director. The order promoting Sergeant Krueger to Lieutenant was rescinded on December 7, 1956, after the plaintiff filed this action, and the position of Lieutenant is now vacant. In January 1956 the annual examination provided for in the Promotion Policy was postponed and it was announced that the 1955 promotion list would have to serve until a new list could be prepared.

The Supreme Court has held that the filling of an official position in the Government "even if it be simply a clerical position, is not a mere ministerial act, but one involving the exercise of judgment", that the "appointing power must determine the fitness of the applicant", and that "it is one of those acts over which the courts have no general supervising power." Keim v. United States, 177 U.S. 290, 293, 20 S.Ct. 574, 575, 44 L. Ed. 774. In the instant case as was said by Judge Letts in Campbell v. Deviny, D.C., 81 F.Supp. 657, 659, affirmed in 90 U.S.App.D.C. 176, 194 F.2d 881.

"The controversy involves the internal administration of a Federal Agency and is one which the courts for more than one hundred years have firmly and consistently refused to entertain. As a matter of public policy the courts will not assume to control the actions of executive officers in the exercise of their judgment and discretion in the complex field of personnel management. To do so would be to usurp the function and prerogative placed by law in the executive. * * * Few principles of law are more definitely established than that in which the courts express forbearance in matters involving the internal administration of the executive branch. Interference by the courts in such matters would be productive of nothing but mischief. * * * The courts have announced adherence to this principle in many decided cases."

It has been held that the mere fact that there is serious controversy as to the meaning or proper construction of a regulation takes the act sought to be performed out of the category of plain ministerial acts subject to being enforced by mandamus. Hitchcock v. United States ex rel. Bigboy, 22 App.D.C. 275.

The following quotation from Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 50 S.Ct. 320, 324, 74 S.Ct. 809, indicates circumstances under which mandamus will and will not lie:

"Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command, it is regarded as being so far ministerial that its performance may be compelled by mandamus, unless there be provision or implication to the contrary. But where the duty is not thus plainly prescribed, but depends upon a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus."

---

1. This policy is set forth in a memorandum on promotion and placement in the National Park Service issued by the Director on May 9, 1955. The plaintiff says that the references therein to consideration by the Director of 3 eligibles or several eligibles relate to field areas and have no application to the United States Park Police. It is unnecessary to consider these conflicting views as the Promotion Policy for the Park Police has no restriction as to the number of eligible candidates to be considered for promotion, and if the mentioned memorandum is applicable the Director has kept within the number therein mentioned.

■ The conclusion this court reaches is:

That under applicable principles of law mandamus is not available to the plaintiff to compel his promotion by the defendants and that the court lacks jurisdiction to grant the relief for which he prays. United States ex rel. Crow v. Mitchell, 67 App.D.C. 61, 89 F.2d 805.

An appropriate proposed judgment should be submitted by the attorneys for the defendants.