**Charles HANCOCK, Appellant,**

v.

**Melvin LAIRD, Secretary of Defense, et al., Appellees.**

**No. 24487.**

United States Court of Appeals
Ninth Circuit.

Aug. 15, 1969.

Kenneth Hecht (argued), and Michael D. Nasatir, San Francisco, Cal., for appellant.

Sheldon Deutsch (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for appellees.

Before HAMLEY, ELY and CARTER, Circuit Judges.

ELY, Circuit Judge:

This appeal is from the District Court's denial of appellant's petition for a writ of mandamus. Hancock, a member of the United States Army, had served four months of combat duty in Vietnam with Company A of the Second Battalion, 18th Infantry, 1st Infantry Division, when, on March 16, 1969, he was granted an emergency thirty-day leave to return to the United States because of a family crisis. Under his leave orders, Hancock was attached, at the end of his leave period, to the Oakland Overseas Replacement Station. The sole purpose of the temporary attachment to this station was the facilitation of Hancock's return to his permanent overseas unit. Upon expiration of the leave period, and after Hancock had been denied his request for a "compassionate reassignment," he was ordered to report to Oakland for transportation to his Vietnam unit. While awaiting this overseas transportation, Hancock filed an application for discharge as a conscientious objector under Army Regulation 635–20. The Oakland command refused to receive the application because paragraph 4(a) of the Regulation requires that servicemen must present such applications "to their immediate commanding officers."[1] The Oakland authorities interpreted paragraph 4(a) to require that appellant process his application through the Vietnam unit to which he was then permanently assigned and under which he had been serving.

Hancock strenuously contends that the District Court erred in following the Oakland command's interpretation of the Regulation. He argues that while the commander of his permanent unit may have been his "ultimate" commanding officer, his "immediate" commanding officer was the commander of the Oakland facility.

The issue presented is not without some difficulty, since the strict literal language of paragraph 6(b) of the Regulation[2] would apparently permit any serviceman at an Overseas Replacement Station to apply, while there, for a conscientious objector discharge. District Judge Peckham reached the conclusion that paragraph 6(b), interpreted reasonably, applies only to the situation wherein a serviceman is awaiting initial shipment and attachment to a new unit rather than the unusual situation, such as here, wherein Hancock was a transient, merely awaiting return to his permanent unit after an emergency leave and temporarily attached to a transfer station for convenience. Judge Peckham's opinion reads, in part, as follows:

"The regulation should apply to those attached (or, if so stated, assigned) to an oversea replacement station for assignment to an oversea unit to which they have not commenced serving. Here, their records would still be presumably in the United States, and no immediate commanding officer would exist thousands of miles away in an overseas unit who would be familiar with the individual.

"On the other hand, the regulation should not apply to individuals such as the plaintiff in the instant case. He was not only assigned to an overseas unit, but had already served there. His presence at the Oakland Overseas Replacement Station was only to facilitate his *return* to his assigned unit,

1. Paragraph 4(a) of AR 63520 provides, in part, as follows: "Military personnel will submit applications for discharge by reason of conscientious objection * * * to their immediate commanding officers."

2. "An individual who applies while he is assigned to an oversea replacement station will be retained in that unit for a period of 7 days. If he does not supply the supporting evidence required * * * within 7 days from the date of his application, he will proceed to comply with his existing orders. If he does supply the required evidence within 7 days, he will be transferred to the Army garrison command at that or another appropriate installation to await final action on his application for discharge. * * *" AR 635–20 § 6(b).

not to effectuate his first trip to an assigned unit."

We agree with Judge Peckham that the true object of the Regulation is that a serviceman's conscientious objector claim be processed at the site where his service record is ordinarily located and where there is more likelihood that there will be access to relevant history bearing upon the determination of the applicant's sincerity.

 Mandamus is an extraordinary remedy, and in the absence of a clear showing of erroneous official action, application for such relief should be denied. The Army's interpretation of the Regulation as a whole has weight. Hancock did not attempt to establish that his service record had not been retained by his permanent unit, nor did he make any claim that his application could not be fairly processed by that unit. There is no reason to believe that if Hancock eventually renews his application, the appropriate command cannot, while the application is being processed, follow, if at all practicable, the desirable policy of sparing the applicant from duty which might do impermissible violence to the type of belief which he now claims to entertain.[3] In the light of all the circumstances, Hancock did not meet the burden required of one who seeks the extraordinary remedy of mandamus. *See* White v. Clemmer, 111 U.S.App.D.C. 145, 295 F.2d 132, 133–134 (1961), *cert. denied*, 368 U.S. 992, 82 S.Ct. 611, 7 L.Ed. 2d 529 (1962); Hammond v. Hull, 76 U.S.App.D.C. 301, 131 F.2d 23, 25 (1942), *cert. denied*, 318 U.S. 777, 63 S.Ct. 830, 87 L.Ed. 1145 (1943).

The order of stay pending appeal is dissolved The Clerk of this court will issue the mandate under this opinion forthwith.

Affirmed.

3. *See*, in addition to the policy set forth by AR 635–20 § 6(b) in note 2 *supra*, the general policy provided by AR 635–20 § 6(a):
"6. Assignment. *a.* Except as indicated in *b* below [note 2 *supra*], an individual who applies for discharge based

on conscientious objection will be retained in his unit and assigned duties providing the minimum practicable conflict with his asserted beliefs pending a final decision on his application.
* * * "