## UNITED STATES ex rel. RUSSELL et al. v. DISTRICT OF COLUMBIA et al.

(Court of Appeals of District of Columbia. Submitted February 7, 1921. Decided March 7, 1921.)

### No. 3474.

1. **Mandamus ⬤87—Not issued to control discretion based on substantial evidence, refusing permit for dance hall.**

   In mandamus proceeding to compel the commissioners of the District to issue a permit for a dance hall, the court is limited to the inquiry as to whether there is any substantial testimony to support the findings of the commissioners, since they are permitted to exercise a sound discretion in all matters within their jurisdiction, and the courts will not reverse their decision, unless it can be said they acted arbitrarily or capriciously.

2. **Mandamus ⬤164 (4)—Answer held to be taken as true, and to sustain refusal of permit for dance hall.**

   In mandamus to compel the commissioners of the District to issue a permit for a dance hall, facts stated in the answer, which must be taken as true on demurrer thereto, showing that the permit of one relator for operating the hall has been revoked for disturbances, and that he had let the place to the other relator, who applied for the new permit, but that the evidence showed that the location and reputation of the hall were such that a dance hall could not be conducted there without disorder and disturbance, were sufficient to justify the commissioners in refusing the permit.

3. **District of Columbia ⬤19—Police regulation authorizing refusal of dance hall permit held sufficiently definite.**

   Police regulation authorizing refusal of permit to conduct dances in halls whenever such place, from the character of the applicant or the nature and the surroundings, is likely to become the scene of disorder or other violation of the law, establishes a sufficiently definite standard for the refusal of such permits.

4. **District of Columbia ⬤19—Regulation confiding discretion to commissioners to refuse dance hall permits is valid.**

   The fact that a police regulation confides to the judgment of the commissioners of the District the determination of the question whether the nature of the surroundings justified denial of a permit to conduct a dance hall does not render the regulation invalid.

Appeal from the Supreme Court of the District of Columbia.

Petition for mandamus by the United States, on the relation of Eugene R. Russell and another, against the District of Columbia and

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the Commissioners thereof. From a judgment discharging the rule and dismissing the petition, after demurrer to the answer was overruled, relators appeal. Affirmed.

Charles W. Clagett and A. L. Sinclair, both of Washington, D. C., for appellants.

F. H. Stephens, of Washington, D. C., for appellees.

SMYTH, Chief Justice. The relators, Russell and Nash, petitioned the court below for a mandamus to compel the commissioners of the District to issue to Russell a permit for a public dance hall at 708 O St. N. W., Washington, and to require the inspector of licenses to issue a license to him for the same place. Defendants filed an answer in response to a rule to show cause. This was demurred to by the relators, but the demurrer was overruled. Relators elected to stand on their demurrer, and consequently the court discharged the rule and dismissed the petition. From this action relators appeal.

The answer must be taken as true. From it we gather these facts: Nash is the owner of the hall and let the place to Russell for a consideration of 50 per cent. of the gross receipts. Prior to April 5, 1918, Nash was licensed to operate the place as a public dance hall, but on that day the license was revoked—

"for the reason that the said hall had become the scene of great disorder and repeated violations of law, and that it was the nightly resort of persons of evil life and fame, such as prostitutes and ex-convicts, who engaged in fights and disorders within said hall and upon the street in front of the same and who committed nuisances in the public alleys and private area ways and yards adjoining and near said hall, and so conducted themselves in general as to render the neighborhood of the said hall unsafe for decent people, especially at nighttime during the progress of dances and public entertainments in said hall."

At the public hearing held for the purpose of determining whether or not the permit now in question should issue, it was testified by citizens residing in the vicinity of the hall that the situation was about as the commissioners had found it when they revoked the former license. They further said that after this had been done the entire situation changed, and citizens were able to enjoy their property and move about the immediate vicinity of the hall—

"without fear of assault or bodily harm and that their women folk could pass and repass the said hall without having their sense of decency affronted and their ears filled with vile, blasphemous and profane language."

They also testified:

"That, from their long residence in the vicinity and their knowledge of the situation, they were sure no dance hall or place of public amusement could be, by any one, properly and decently conducted in this location inasmuch as it was such a location and had such a reputation as such dance hall as not to be attractive to decent people."

It also appears that Russell is an old man, and not able, by reason of his age, to quell disorder among the persons most likely to resort to the hall.

Acting on this testimony the commissioners found that the operation of a dance hall on the premises would be likely to become the cause of disorder and other violations of law, and hence they refused the permit.

Relators say that the things for which Nash's permit was revoked arose out of war conditions then prevailing in that part of Washington, and they insist that there has been a change in that respect since then. They also say that there is nothing in the record to the contrary but the mere opinion of witnesses. It is true that opinions were expressed by those who testified, but they also gave the facts on which they based them, and those facts, set out above, amply justified the conclusions drawn from them.

[1, 2] The court is limited in this proceeding to the inquiry as to whether or not there is any substantial testimony to support the findings of the commissioners. They are administrative officers and are permitted to exercise a sound discretion in all matters which come within their jurisdiction. Unless it can be said that they acted arbitrarily or capriciously, the courts will not reverse their decisions. The problem is not whether they erred in the determination of a question of fact, but rather whether there was sufficient evidence to warrant the exercise of their judgment and discretion. We think there was, and where that is so "the responsibility is theirs and not ours." Richards v. Davison, 45 App. D. C. 395, 401, citing United States ex rel. Ness v. Fisher, 223 U. S. 683, 32 Sup. Ct. 356, 56 L. Ed. 610.

[3] But relators assert that section 25 of the Police Regulations, under which the commissioners acted, is void for indefiniteness. It provides that—

"Permits to conduct dances or entertainments of any kind in halls or other places may be refused by the commissioners of the District of Columbia whenever such place, from the character of the applicant or the nature of the surroundings, is likely to become the scene of disorder or other violation of law. * * * Any person protesting * * * shall be entitled to a public hearing before the assessor who shall ascertain and report the facts together with his advice thereon to the commissioners."

They say this does not furnish any uniform standard by which the meaning of the term "nature of the surroundings" can be ascertained; that the whole matter is left to the opinion of the commissioners, and hence the rights of the citizen are subject to the "absolute, uncontrolled, and arbitrary action" of the commissioners. The criticism is not valid.

The standard is: Do the character of the applicant and the nature of the surroundings show that the place would likely become the scene of disorder or other violation of law if the permit were issued? We think it is definite and easily understood. The question calls for a determination of fact which is to be made by the triers of fact—the commissioners—after a public hearing. The norm is certainly as definite as where the question of negligence is involved in a law action. In such a case the court defines negligence as the failure to do that which a reasonably prudent man would do under similar circum-

stances. What would he do? The jury must answer, and then determine whether the evidence discloses that the person's conduct which is under analysis conforms to the answer. So here the commissioners must determine from the evidence whether or not the place in question would likely become the scene of unlawfulness if a permit were granted. The standard in the one case is just as definite as in the other.

[4] Complaint is made because the determination of the nature of the surroundings and the likelihood that the place would become the scene of disorder is confided to the judgment of the commissioners. Every question of fact in the administration of justice, as well as in the executive department of the government, must be resolved in harmony with the judgment of some one. If the fact that it must be is a fatal objection to our procedural law, we have been wrong for many years. But it is not.

The judgment of the commissioners, however, cannot be capricious or arbitrary. There must be, as we have seen, some competent evidence to support it. Richards v. Davison, supra; Roberts v. United States, 176 U. S. 221, 20 Sup. Ct. 376, 44 L. Ed. 443; Lane v. Hoglund, 244 U. S. 174, 37 Sup. Ct. 558, 61 L. Ed. 1066; United States ex rel. Wattis v. Lane, 49 App. D. C. 385, 266 Fed. 1005.

In addition it is said that no one can safely use his property for a public dance hall, because he is unable to determine what is the "nature of the surroundings" which will render his hall unfit for that purpose. As well may a person say he could not use his property for an industrial plant, because he could not tell what a jury might hold to be negligence on his part in case of injury to his employés. But reasonable men, we think, would have no difficulty in determining whether or not the surroundings of a given place were likely to lead to disorder.

Chevy Chase Sanatorium v. District of Columbia, 46 App. D. C. 558, 571, does not support relators' contentions, although it is relied upon by them. The commissioners found that the sanatorium was a nuisance. The court held that there was no authority for this, saying:

"There is neither a statute nor a regulation specifying what acts or omissions on the part of such an institution will constitute it a nuisance."

Here we have a valid regulation specifying what would justify the refusal of a permit. The other decisions cited by relators, when properly understood, are equally inapposite.

The court below was right in overruling the demurrer, and its judgment is affirmed, with costs.

Affirmed.

Mr. Justice STAFFORD, of the Supreme Court of the District of Columbia, sat in the place of Mr. Justice ROBB in the hearing and determination of this appeal.