### CLORE RESTAURANT, Inc., v. PAYNE et al.
### Civ. A. No. 63–47.

District Court of the United States for the District of Columbia.

July 14, 1947.

F. Joseph Donohue (of Donohue, Kaufmann & Kronheim), of Washington, D. C., for plaintiff.

Vernon E. West, Corporation Counsel, Oliver Gasch, Robert D. Wise, and Ralph D. Quinter, Jr., Assts. Corporation Counsel, all of Washington, D. C., for defendants.

CURRAN, Associate Justice.

This is an action in the nature of a petition for a writ of mandamus to require the Alcoholic Beverage Control Board to issue a Retailer's Class "C" license to Clore Restaurant, Inc., a body corporate, organized and existing under the laws of the District of Columbia, and doing business in said District.

The plaintiff, Clore Restaurant, Inc., is the owner of a restaurant located at 2001–14th Street, N. W., which is zoned as "first commercial" property. In October, 1946, the plaintiff filed with the Alcoholic Beverage Control Board of the District of Columbia, an application for a Retailer's Class "C" license, which is a license issued as an incident to the conduct of a restaurant business. On November 8, 1946 the Board held a hearing on the application at which time the plaintiff's President-Treasurer, Anna J. Clore, and several other witnesses testified that the place for which the license was re-

quested was an appropriate one, considering the character of the premises, its surroundings and the wishes of the persons residing or owning property in the immediate neighborhood. No witnesses appeared to give testimony to the contrary. At the close of the hearing, the Board informed the applicant that it wanted to hear from the Commanding Officer of No. 13 Police Precinct, in which precinct the applicant's place of business is located. The Board set December 4, 1946 as the date on which such testimony would be taken. On December 4th there appeared before the Board Captain Truscott, Lt. Pittman and Officer Bombard of No. 13 Police Precinct. Captain Truscott testified that "he did not think issuance of license of Class 'C' would add to police problem" and "that 14th and U Streets had the best police protection in the precinct". Lt. Pittman testified that there was "no trouble with licensed places" and "they do not create a problem on the corner of 14th and U Streets". Officer Bombard testified that "it is the best policed corner in the precinct". In the file of the Alcoholic Beverage Control Board, and introduced as Plaintiff's Exhibit No. 9, there was the report of the Board's Assistant Chief Inspector signifying, among other things, that this was a "bona fide restaurant, serving meals" and that the restaurant was "clean and tidy at this inspection".

On December 18, 1946, a majority of the Board denied the application and refused to issue the license applied for. The dissenting member of the Board found there was no testimony adduced at the hearings which would support a finding of fact sufficient to justify a refusal to grant the license.

The notice of rejection of the application was as follows:

"Government of the District of
Columbia
"Alcoholic Beverage Control Board
"December 18, 1946
"F. Joseph Donohue, Esquire
"503 D Street, N. W.
"Washington, D. C.

"Dear Sir:

"Careful consideration has been given to the application of Clore Restaurant, Inc., for a Retailer's Class 'C' License at 2001—14th Street, N. W.

"You are advised that the majority of the Board denies the application and refuses the license under Section 14(a) 5 of the Alcoholic Beverage Control Act.

"Kindly have the enclosed voucher signed where checked and return to this office together with the receipt which was issued to the applicant at the time payment was made."

"Very truly yours,
"Alcoholic Beverage Control Board
"(Sgd.) Agnes K. Mason
"Agnes K. Mason
'Member of the Board"
(Plaintiff's Ex. No. 1.)

In response to that letter, the attorney for the applicant wrote to the Board as follows:

"December 20, 1946
"Alcoholic Beverage Control Board
"New Municipal Building
"Washington, D. C.

"Dear Madam and Sirs:

"I have your letter of December 18, 1946, in which you advise me that upon careful consideration the majority of the Board had denied the application of Clore Restaurant, Inc., 2001 14th Street, N. W., for a Retailer's Class 'C' license.

"This letter states that the denial of this application by the majority of the Board is based upon Section 14(a) 5 of the Alcoholic Beverage Control Act. If this be so, then I take it that the majority of the Board has denied the application either (1) because of the character of the premises, (2) because of the surroundings, or (3) because of the wishes of the persons residing or owning property in the neighborhood of the premises.

"It is not the purpose of this letter to repeat the arguments which were stressed before the Board at the time of the hearing, for the Board is aware as am I that there is not one scintilla of evidence in the record of this hearing to show either that the premises or its suroundings are not suitable or a single word of evidence indicating that the persons residing or owning property in the neighborhood had any objection to the issuance of this license. The majority of

the Board cannot have forgotten that the Captain of the Police Precinct in which these premises are located, a Lieutenant of that precinct, and the license officer of the precinct, all gave evidence before the Board and no one of them found any reason to object to the granting of this license.

"Section 6 of the Alcoholic Beverage Control Act vests solely in the Board the right, power and jurisdiction to issue a license. This power, of course, includes the power to deny an application for a license. In granting this power, Congress in Section 6 stated: 'The act of the Board on any question of fact shall be final and conclusive.'

"I am now faced with the problem of advising my client as to its rights in the matter arising out of the action of the Board, or action of the majority of the Board in denying its application for a license. I shall, of course, advise my client that while under Section 6 the Board has the sole right to issue or deny a license, that nonetheless such action is subject to review by the United States District Court for the District of Columbia, if it appears that the action of the Board in denying a license is arbitrary, capricious or unreasonable. I believe that the test of the law on this question is not whether or not the Court may have come to a definite conclusion from the Board on such evidence as may have been before the Board, but whether or not there was any evidence before the Board which could support the Board's Finding. It is my honest opinion from having participated in the two hearings which were held in this matter that there was no evidence upon which the majority of the Board could refuse the application under Section 14(a) 5.

"Since Section 6 of the Act of Congress makes the action of the Board on any question of fact final and conclusive, I must respectfully request the Board to give me a copy of its Finding of Fact upon which it reached its conclusion, in order that I may be able to intelligently advise my client as to what further action it should take in this matter. As time is an important element because of the near ending of the present license year, I ask that you make this information available to me at the earliest convenience.

"I am,
"Very truly yours,
"F. Joseph Donohue".
(Plaintiff's Ex. No. 2.)

In reply to counsel's letter, the Chairman of the Board wrote as follows:

"Government of the District of Columbia
"Alcoholic Beverage Control Board
"December 27, 1946
"F. Joseph Donohue, Esq.
"503 D Street, N. W.
"Washington, 1, D. C.

"Dear Sir:

"Reference is made to your letter of December 20, 1946 concerning denial of a class 'C' license at premises 2001—14th Street, N. W.

"There was no Finding of Fact in this case, therefore, no copy exists to furnish you.

"The decision of the majority of the Board was based upon the location of the premises and the belief that this area is now adequately serviced so far as licensed establishments are concerned.

"The majority of the Board was unable to see any change in the character of the surroundings of these premises since last March, when the entire Board denied a class 'D' license there.

"Yours very truly,
"Alcoholic Beverage Control Board
"(Sgd.) Alan W. Payne,
"Alan W. Payne,
"Chairman".
(Plaintiff's Ex. No. 3.)

The plaintiff, having exhausted its administrative remedies, now applies to this Court for relief. The remedy which, before the adoption of the New Rules of Civil Procedure, was known as mandamus, is available under the New Rules and is governed by the same principles as formerly governed its administration. Federal Rules of Civil Procedure, rule 81(b), 28 U.S.C.A. following section 723c; National Bondholders Corp. v. McClintic, 4 Cir., 99 F.2d 595; George Allison & Co. Inc. v. Interstate Commerce Commission, 70 App.D.C.

375, 107 F.2d 180; Levine v. Farley, 70 App.D.C. 381, 107 F.2d 186; Hammond v. Hull, et al., 76 U.S.App.D.C. 301, 131 F. 2d 23:

In the last-mentioned case, the Court summarized these principles as follows:

"(1) The writ should be used only when the duty of the officer to act is clearly established and plainly defined and the obligation to act is peremptory.

"(2) The presumption of validity attends official action, and the burden of proof to the contrary is upon one who challenges the action.

"(3) Courts have no general supervisory powers over the executive branches or over their officers, which may be invoked by writ of mandamus. Interference of the courts with the performance of the ordinary duties of the executive departments of the government would be productive of nothing but mischief.

"(4) When the performance of official duty requires an interpretation of the law which governs that performance, the interpretation placed by the officer upon the law will not be interfered with, certainly, unless it is clearly wrong and the official action arbitrary and capricious.

"(5) For it is only in clear cases of illegality of action that courts will intervene to displace the judgments of administrative officers or bodies.

"(6) Generally speaking, when an administrative remedy is available it must first be exhausted before judicial relief can be obtained, by writ of mandamus or otherwise." Supra, 76 U.S.App.D.C. page 303, 131 F.2d 25.

Under that decision, and under the recognized tests governing proceedings in mandamus, the question before the Court now is whether the action of the Board was based upon substantial evidence. If it was, mandamus will not lie. If it was not, the next question is whether the action of the Board can be said to be arbitrary or capricious.

It may be conceded at once that the liquor business is not one in which a person has a natural right to engage because it is potentially dangerous to the community. It may also be conceded that there is a wide difference between the discretion reposed in and exercised by a board having jurisdiction to issue a license for the sale of alcoholic beverages and that which is vested in a board to license callings in which one has a vested right to engage.

Section 14a of the Alcoholic Beverage Control Act, D.C.Code 1940, § 25—115(a), provides, in part, as follows:

"Before a license is issued the Board shall satisfy itself" of certain things among which is:

"5. That the place for which the license is to be issued is an appropriate one considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired."

In the Board's letter of December 18, 1946, above quoted, it was stated that the majority of the Board had denied the application and refused to issue the license under the above-mentioned section of the Act.

The plaintiff, therefore, could rightly have concluded that the majority of the Board had denied the application either (1) because of the character of the premises, (2) because of its surroundings, or (3) because of the wishes of the persons residing or owning property in the neighborhood of the premises for which the license was desired.

If the ruling of the majority of the Board was based upon sound legal principles and upon substantial evidence, this Court, as stated before, would not be justified in interfering with the action of the Board. This is reflected in Section 6 of the Alcoholic Beverage Control Act, D.C.Code 1940, § 25—106, which provides: "The right, power, and jurisdiction to issue, transfer, revoke, and suspend all licenses under this chapter shall be vested solely in the board, and the action of the Board on any question of fact shall be final and conclusive."

If, however, there was no substantial evidence upon which to predicate a rejection,

then the action of the Board is clearly subject to judicial review.

At the hearings before the Board there was not one scintilla of evidence that the premises or its surroundings were not suitable; nor did any person residing or owning property in the neighborhood appear and object to the issuance of the license. After counsel for the plaintiff wrote the Board expressing doubt as to whether there was any evidence before the Board which would support the Board's finding, and requesting a copy of the Board's Finding of Fact, the Chairman of the Board advised counsel there had been no Finding of Fact and, therefore, no copy existed to furnish him. *It was then, for the first time,* that the Board disclosed that the decision of the majority was based upon the location of the premises and the belief that the area was adequately serviced so far as licensed establishments were concerned. At no time during either hearing was it even suggested by any witness, by counsel, or by any member of the Board, either by way of direct statement or innuendo, that the area was adequately serviced. Indeed, the dissenting member of the Board testified before this Court that he had no recollection of the other members of the Board ever discussing with him the adequacy of the service of that area. Then too, the majority of the Board certified on the application itself (Plaintiff's Ex. No. 4) that its denial was based on Section 14(a)5, and no mention whatever was made as to the adequacy of service for that area.

Furthermore, there was no evidence before the Board as to how many restaurants there were in the "area"; whether or not the "area" was heavily or sparsely populated; no mention of the relative porportion of persons who made their residences there and those who worked there; no evidence as to the extent of the businesses and other public places in the surrounding neighborhood; no evidence as to the volume of business done by the other licensees in the neighborhood; or any of the many factors which would have enabled the Board to weigh the circumstances and arrive at a considered judgment as to whether the "area" was already "adequately serviced"

instead of making the pronouncement without having any evidence on which to base it.

The members of the Board are administrative officers and are permitted and required to exercise sound discretion in all matters which come within their jurisdiction and unless it can be said that they acted arbitrarily and capriciously, the courts will not interfere. The problem is not whether they erred in their determination of a question of fact, but rather whether there was sufficient evidence to support their ruling. United States ex rel. Russell v. District of Columbia, 50 App.D.C. 296. 271 F. 370.

■ On the facts as above related, did the majority of the Board, in denying this license, act arbitrarily and capriciously?

The conclusion is inevitable that they did. In the Court's opinion, their action was unwarranted in law because it was without any factual basis in the evidence. Considering that there was not one word mentioned at either hearing as to the adequacy of service in the area; that the Board in its first notification to the plaintiff of its refusal to issue a license did not assign that as the reason therefor; that the dissenting member of the Board testified before this Court that he had no recollection of the other members of the Board ever discussing with him the adequacy of the service of that area; that there was no evidence before the Board upon which it could have arrived at a considered judgment as to whether the area was already adequately serviced; and, further, that if the majority of the Board were of the opinion that this area was already adequately serviced, then the two hearings served no real purpose, it must be concluded that the action of the majority of the Board was arbitrary and capricious.

Furthermore, at the close of the hearing before the Board on November 8, 1946, one Board member made this statement: "Of course, you understand, Mr. Donohue, the Board can take no action until we get the police report. If it should develop that the police should send in an adverse report on this place, the case will be continued for another hearing." (Plaintiff's Ex. No. 5.)

If the Board was satisfied that this area was already adequately serviced, then no police report on this location was necessary at all. But the Board could not properly have come to the conclusion that the area was already adequately serviced without *some* evidence to establish that fact. There was a complete absence of evidence on that point.

For the reasons stated, the relief prayed for by the plaintiff will be granted and counsel for plaintiff will prepare the appropriate order.